## Case No. 14,692b.

### UNITED STATES v. BURR.[1]

[Coombs' Trial of Aaron Burr, 22.]

Circuit Court, D. Virginia. May 26, 1807.

CRIMES—COMMITMENT—POWER OF COURT.

[1. The circuit court of the United States, sitting as a court, possesses the power to commit any person charged with an offense against the United States.]

[2. The court should hear a motion to commit a person for a crime notwithstanding the grand jury is in session ready to receive an indictment, and the prosecutor has evidence to support it, and the result of the motion may be the publication of evidence unfavorable to justice and the right decision of the case.]

[Cited in Erwin v. U. S., 37 Fed. 487.]

[At law. Motion to commit Aaron Burr on a charge of high treason in levying war against the United States. Pending the hearing by the grand jury of charges against Burr for high treason, Mr. Hay, Dist. Atty., gave notice in open court of his intention to submit a motion to commit Burr on the charge of high treason. On the previous examination (Case No. 14,692a), he said there was no evidence of an overt act, and he was committed for a misdemeanor only. The evidence is different now. The grand jury, being present, were requested to withdraw.]

Mr. Hay then stated more at large the grounds of his application, and moved to commit Mr. Burr on a charge of high treason against the United States, on the evidence formerly introduced, and on additional testimony to be now brought forward. In answer to a question from Mr. Wickham, he stated that when the witnesses were present he intended to examine them viva voce; but where they were absent to make use of their affidavits, regularly taken and certified.

This motion was discussed at length, throughout the day, by Messrs. Botts, Wick-

---

[1] [For references to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see footnote to Case No. 14,692a.]

ham, Randolph and Burr, in opposition, and Messrs. Hay and Wirt in support of it.

By some of Mr. Burr's counsel the power of the court to commit after the grand jury had been empannelled was called in question, while others admitted the power, but denied the expediency of exercising it. It was urged that the office of the grand jury was to perform the very duty which the court, by this motion, was called on to perform. It was denied that any precedent could be found, either English or American, for the proposed proceeding. It was argued that a public examination of the evidence the district attorney might see fit to bring forward against Col. Burr would have a tendency to increase the prejudice already existing in the public mind against him, and in spite of all precautions this testimony would reach the ears of the grand jury. Col. Burr, it was said, having appeared pursuant to his recognizance, and being ready to answer the charges against him, ought rather to. be discharged therefrom than committed, if the government was not ready to proceed against him before the grand jury. The proposed proceeding was denounced as oppressive in its effects, whether so intended or not. The acts of the government towards Col. Burr, in seizing and destroying his property; in his arrest and conveyance to Richmond under a military guard, after his case had been submitted to a grand jury and no bill found; after he had been tried and acquitted, were characterized as illegal and oppressive. As to Gen. Wilkinson, it was asked why he was not present, if his testimony was so important?

In support of the motion, it was argued that the general power of the court to commit being conceded, it was incumbent on the other side to produce precedents showing that this power ceased when a grand jury was empannelled, if they so contended. The course of the government towards Col. Burr was defended with zeal, and pronounced moderate and humane. Gen. Wilkinson, it was said, was supposed to be on the way from New Orleans, but there had not been time for him to come, on a reasonable calculation. It was well known to the accused that he would be put on his trial for high treason should Gen. Wilkinson arrive. He might know of his arrival or landing as soon as the counsel for the prosecution, and would have it in his power to effect an escape by merely paying his recognizance.

At the conclusion of the argument, which was closed by Mr. Burr, the court adjourned.

Before MARSHALL. Chief Justice, and GRIFFIN, District Judge.

MARSHALL, Chief Justice, delivered the following opinion:

In considering the question which was argued yesterday, it appears to be necessary to decide: 1st. Whether the court, sitting as a· court, possesses the power to commit any person charged with an offence against the United States. 2d. If this power be possessed, whether circumstances exist in this case which ought to restrain its exercise.

The first point was not made in the argument, and would, if decided against the attorney for the United States, only change the mode of proceeding. If a doubt can exist respecting it, that doubt arises from the omission in the laws of the United States to invest their courts, sitting as courts, with the power in question It is expressly given to every justice and judge, but not to a court. This objection was not made on the part of Colonel Burr, and is now mentioned. not because it is believed to present any intrinsic difficulty, but to show that it has been considered. This power is necessarily exercised by courts in discharge of their functions, and seems not to have been expressly given, because it is implied in the duties which a court must perform, and the judicial act contemplates it in this light. They have cognizance of all crimes against the United States; they are composed of the persons who can commit for those crimes; and it is obviously understood, by the legislature, that the judges may exercise collectively the power which they possess individually, so far as is necessary to enable them to retain a person charged with an offence in order to receive the judgment which may finally be rendered in his case. The court say, this is obviously understood by the legislature, because there is no clause expressly giving to the court the power to bail or to commit a person who appears in discharge of his recognizance, and against whom the attorney of the United States does not choose to proceed; and yet the thirty-third section of the judicial act evinces a clear understanding in the legislature that the power to take bail is in possession of the court. If a person shall appear in conformity with his recognizance, and the court passes away without taking any order respecting him. he is discharged. A new recognizance, therefore, or a commitment on the failure to enter into one, is in the nature of an original commitment, and this power has been uniformly exercised.

It is believed to be a correct position, that the power to commit for offences of which it has cognizance is exercised by every court of criminal jurisdiction, and that courts as well as individual magistrates are conservators of the peace. Were it otherwise, the consequence would only be that it would become the duty of the judge to descend from the bench. and, in his character as an individual magistrate. to do that which the court is asked to do. If the court possesses the power, it is certainly its duty to hear the motion which has been made on the part of the United States; for, in cases of the character of that under consideration, its duty and its power are co-extensive with each other. It was observed when the motion

was made, and the observation may now be repeated, that the arguments urged on the part of the accused rather prove the motion on the part of the United States unnecessary, or that inconveniencies may arise from it, than the want of a legal right to make it. The first is, that the grand jury being now in session ready to receive an indictment, the attorney for the United States ought to proceed by bill instead of applying to the court, since the only purpose of a commitment is to bring the accused before a grand jury. This statement contains an intrinsic error which destroys its operation. The commitment is not made for the sole purpose of bringing the accused before a grand jury; it is made for the purpose of subjecting him personally to the judgment of the law, and the grand jury is only the first step towards that judgment. If, as has been argued, the commitment was simply to detain the person until a grand jury could be obtained, then its operation would cease on the assembling of a grand jury; but such is not the fact. The order of commitment retains its force while the jury is in session, and if the prosecutor does not proceed, the court is accustomed to retain a prisoner in confinement, or to renew his recognizance to a subsequent term.

The arguments drawn from the general policy of our laws; from the attention which should be bestowed on prosecutions, instituted by special order of the executive; from the peculiar inconveniencies and hardships of this particular case; from the improper effects which inevitably result from this examination, are some of them subjects for the consideration of those who make the motion, rather than of the court; and others go to the circumspection with which the testimony in support of the motion ought to be weighed, rather than to the duty of hearing it.

It has been said that Colonel Burr already stands charged with treason, and that, therefore, a motion to commit him for the same offence is improper. But the fact is not so understood by the court. The application to charge him with treason was rejected by the judge to whom it was made, because the testimony offered in support of the charge did not furnish probable cause for the opinion that the crime had been committed. After this rejection, Colonel Burr stood, so far as respected his legal liability to have the charge repeated, in precisely the same situation as if it had never been made. He appears in court now as if the crime of treason had never before been alleged against him. That it has been alleged, that the government had had time to collect testimony for the establishment of the fact, that an immense crowd of witnesses are attending for the purpose, that the prosecutor in his own judgment has testimony to support the indictment, are circumstances which may have their influence on the motion for a commitment, or on a continuance, but which cannot

deprive the attorney for the United States of the right to make his motion. If he was about to send up a bill to the grand jury, he might move that the person he designed to accuse should be ordered into custody, and it would be in the discretion of the court to grant or to reject the motion.

The court perceives and regrets that the result of this motion may be publications unfavorable to the justice and to the right decision of the case; but if this consequence is to be prevented, it must be by other means than by refusing to hear the motion. No man, feeling a correct sense of the importance which ought to be attached by all to a fair and impartial administration of justice, especially in criminal prosecutions, can view, without extreme solicitude, any attempt which may be made to prejudice the public judgment, and to try any person, not by the laws of his country and the testimony exhibited against him, but by public feelings, which may be and often are artificially excited against the innocent as well as the guilty. But the remedy, for a practice not less dangerous than it is criminal, is not to be obtained by suppressing motions which either party may have a legal right to make.

If it is the choice of the prosecutor on the part of the United States to proceed with this motion, it is the opinion of the court that he may open his testimony.